# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

RONALD J. HYLLA,                                  Civil No. 06-4700 (JRT/RLE)

                            Plaintiff,

v.

                                          **ORDER ADOPTING REPORT AND**
TRANSPORTATION                            **RECOMMENDATION**
COMMUNICATIONS
INTERNATIONAL UNION,

                            Defendant.

---

James T. Hansing, **HANSING LAW OFFICE**, 331 Second Avenue South, Suite 840, Minneapolis, MN 55401, for plaintiff.

Carmen R. Parcelli, Elizabeth A. Roma, Joseph Guerrieri, Jr., **GUERRIERI, EDMOND, CLAYMAN & BARTOS, P.C.**, 1625 Massachusetts Avenue NW, Suite 700, Washington D.C., 20036; Michael W. Unger, **ATTORNEY AT LAW, PLLC**, 90 South Seventh Street, Suite 4700, Minneapolis, MN 55402, for defendant.


Plaintiff Ronald Hylla ("Hylla") brought this action against defendant Transportation Communications International Union ("Union") alleging the Union violated his free speech rights and engaged in common law defamation. The Union filed a motion to dismiss and an alternative motion for summary judgment, and Hylla filed a motion for summary judgment. In a Report and Recommendation dated August 7, 2007, United States Magistrate Judge Raymond L. Erickson recommended that this Court grant the Union's motion and deny Hylla's motion. Hylla objected to the Report and Recommendation. This Court has conducted a *de novo* review of the objections under 28

U.S.C. § 636(b)(1)(C) and D. Minn. LR 72.2(b).  For the reasons discussed below, the Court adopts the Magistrate Judge's recommendation.[1]

## BACKGROUND[2]

Hylla was a member of defendant Union from 1976 until 2007.  In May 2004, Hylla was elected Senior Vice General Chairman of System Board 46 ("System Board"), an intermediate governing body of the Union that includes various local unions.  On November 14, 2005, Hylla approached Larry Swanson, the General Chairman of the System Board and Hylla's superior, regarding records that were being made of Hylla's work attendance.

Swanson told Hylla that he had instructed Kelly Gilbertson, an administrative employee in the local office, to make daily attendance records for all System Board officers.  Hylla responded to Swanson that he was being singled out, and stated that if Gilbertson was going to document his attendance, then he was going to monitor and document Gilbertson's attendance.  Swanson told Hylla that would be a waste of time, and that he was not open to further discussion on the matter.  Hylla replied, "Well, fuck you."  Swanson then left the office to make a phone call.

---

[1] As discussed below, the Court declines to exercise supplemental jurisdiction over Hylla's defamation claims and thus dismisses those claims for lack of jurisdiction.  Because the Magistrate Judge considered the merits of Hylla's defamation claims, the Court adopts the Report only with respect to Hylla's federal claim, but adopts the Magistrate Judge's Recommendation as to all claims.

[2] The parties do not dispute the basic underlying facts as summarized by the Magistrate Judge and as set forth in the transcript of the internal union hearing.

When Swanson returned to the office, he saw Gilbertson standing in front of her office door and observed that she was visibly upset.  Swanson asked Gilbertson whether something was wrong, and she responded that she had just been threatened by Hylla. Gilbertson explained that Hylla had walked into her office, thrown a stack of papers onto her desk, and told her to "watch your back."  (Decl. of Mitchell M. Kraus, Ex. 9, at 56-57.)

Later that day, Swanson contacted the International President of the Union, Robert Scardelletti, to discuss these incidents.  As a result of that discussion, Swanson contacted Hylla on November 16, 2005, and told him not to return to work at the System Board office until instructed otherwise.  In a letter dated November 18, 2005, Scardelletti informed Hylla that he was being charged with conduct unbecoming an officer, insubordination, and dereliction of duty, in violation of the Union constitution.  In addition to the conduct described above, the letter alleged that Hylla had failed to comply with orders given by Swanson on several occasions.  The letter further stated that Hylla was suspended pending a request for a hearing on these charges.

On December 1, 2005, Hylla requested a hearing.  On December 15, 2005, Scardelletti informed Hylla by letter that he had received reports that Hylla had contacted a Union District Chairman regarding Union business despite his suspension.  That same day, Scardelletti sent a letter to all District Chairpersons informing them of Hylla's suspension and enclosing a copy of the November 18, 2005, letter to Hylla.

A hearing was held on January 19, 2006.  On February 3, 2006, a Union hearing officer issued his Findings and Recommendations, recommending that Hylla be found

guilty of all but one of the charges against him.[3]   The hearing officer further recommended that Hylla be removed from office and declared permanently ineligible to hold Union office in the future.   Scardelletti adopted the hearing officer's recommendations in a letter to Hylla dated February 9, 2006.  Scardelletti then sent a letter to all District Chairpersons on February 17, 2006, informing them of his decision adopting the hearing officer's recommendations and enclosing a copy of the February 9 letter to Hylla.

Hylla appealed Scardelletti's decision to the Union's Executive Counsel, which sustained the decision.  Hylla then brought this action on November 30, 2006, arguing that the Union's decision to remove him from office violated his right to free speech under Title I of the Labor-Management Reporting and Disclosure Act ("LMRDA"). Hylla further claims that the letters of December 15, 2005, and February 17, 2006, sent by Scardelletti to District Chairpersons constitute common law defamation.  The Union filed this motion to dismiss or, in the alternative, for summary judgment.  Hylla also filed a motion for summary judgment.[4]

The Magistrate Judge found that Hylla had failed to allege a violation of his right to free speech under the LMRDA, depriving the Court of subject matter jurisdiction over Hylla's claims.  Even assuming that Hylla's speech was protected under the LMRDA, however, the Magistrate Judge found that the Union's disciplinary action against Hylla was in accordance with its constitution and was not unlawful.  The Magistrate Judge then

---

[3]   The hearing officer recommended that Hylla be found not guilty of failing to follow orders on August 30, 2004.

[4] Hylla's motion for summary judgment is not separately briefed.

exercised supplemental jurisdiction over Hylla's defamation claims, finding that Hylla had failed to allege a viable defamation claim because he made no showing of actual malice and, alternatively, because the statements in question were literally true.  For these reasons, the Magistrate Judge recommended that this Court grant the Union's motion and deny Hylla's cross-motion.  These objections followed.

## I.      STANDARD OF REVIEW

The Union's motion argues in part that the Court has no subject matter jurisdiction over Hylla's claims.  Federal Rule of Civil Procedure 12(b)(1) permits a defendant to file a motion to dismiss for "lack of jurisdiction over the subject matter."  In determining whether jurisdiction exists, the Court is "free to weigh the evidence and satisfy itself as to the existence of its power to hear the case."  *Osborn v. United States*, 918 F.2d 724, 729-30 (8th Cir. 1990).  It is the plaintiff's burden to establish that jurisdiction does in fact exist.  *Id.*  If the Court finds that jurisdiction is not present, it is obligated to dismiss the matter.  Fed. R. Civ. P. 12(h); *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583-84 (1999).

## II.     HYLLA'S LMRDA CLAIM

Hylla first argues that the Magistrate Judge improperly concluded that his conduct was not protected under Title I of the LMRDA.  Title I of the LMRDA, known as the union members' "Bill of Rights," is designed to foster democratic governance within labor unions and to encourage union members to discuss and to dissent from union policies and practices.  *Mallick v. Int'l Bhd. of Elec. Workers*, 644 F.2d 228, 235 (3d Cir.

1981).  Title I guarantees union members certain basic rights, including "the right to meet and assemble freely with other members" and "to express any views, arguments, or opinions."  29 U.S.C. § 411(a)(2).  However, these rights are limited by the right of the labor organization to "adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations."  29 U.S.C. § 411(a)(2).  While Title I grants union members "an almost absolute free speech right," the free speech rights of a union officer are more circumscribed because the officer acts in a representative capacity on behalf of the union members.  *See Maceira v. Pagan*, 649 F.2d 8, 14 (2d Cir. 1981).

In determining whether a union member's conduct constitutes protected speech under Title I of the LMRDA, courts generally inquire whether the member's conduct relates to the general interests of the union membership at large.  For example, in *Salzhandler v. Caputo*, 316 F.2d 445, 447 (2d Cir. 1963), a union financial secretary accused union officers of embezzlement and, in a flier distributed to the union membership, described the officers as "thieves, scabs, robbers, scabby bosses, bums, pimps, f-bums, [and] jailbirds."  The court found that the secretary's conduct was protected speech under Title I because it related to the general financial interests and management of the union.  *Id.* at 450-51; *see also Kelsey v. Philadelphia Local 8*, 294 F. Supp. 1368, 1374 (E.D. Pa. 1968) (finding that a union official's offer to fight a superior official who gave out job assignments to members was protected conduct because it concerned a matter of "utmost importance" to union members).  Thus, even

epithets and "loosely-worded threat[s]" to a fellow union member may be protected speech so long as they are related to the general interests of union members.   *See Mallick*, 644 F.2d at 235.

Hylla contends these cases support his position that his statement "Well, fuck you," to Swanson is protected speech under the LMRDA.  Hylla argues that the use of obscenities was commonplace in the office, and that the union's justification for Hylla's termination is pretextual.  The Court is not persuaded, however, that Hylla's statement to Swanson was related to or in the interest of the general union membership as a whole. The dispute between Hylla and Swanson stemmed from Hylla's belief that he was being singled out by Swanson's attendance policy and, by implication, that the attendance policy did not in fact concern the union membership at large.  Even if the attendance policy concerned union members other than Hylla, however, it applied only to a discrete subset of union employees who worked in the System Board office.  As such, the Court agrees with the Magistrate Judge that Hylla's statement to Swanson did not concern the general interests of the union membership, and thus is not protected speech under Title I of the LMRDA.

Hylla also argues that his conduct with respect to Gilbertson, including the statement "Watch your back," is protected speech under the LMRDA.  Hylla contends that his conduct toward Gilbertson was non-threatening in nature because he had a close working relationship with her.  Even accepting Hylla's argument that his actions were non-threatening to Gilbertson, however, the Court finds that Hylla's actions did not relate to the general interests of the union membership at large.  There is no evidence that Hylla

had ever discussed the attendance policy with Gilbertson. As a clerical employee, Gilbertson had no authority to change or modify the attendance policy, but simply maintained attendance records at the behest of Swanson. Further, as discussed above, Hylla's frustration at the attendance policy stemmed from his belief that he was being unfairly singled out. For these reasons, the Court agrees with the Magistrate Judge that Hylla's conduct with respect to Gilbertson is not protected speech under Title I of the LMRDA.

Because Hylla has not established that he engaged in protected speech under the LMRDA, the Court concludes that it does not have subject matter jurisdiction over this action. The Court therefore adopts the Report and Recommendation and grants the Union's motion to dismiss on this basis.

## III.   HYLLA'S DEFAMATION CLAIM

Hylla next argues that Scardelletti's letters to District Chairpersons dated December 15, 2005, and February 17, 2006, were defamatory. The Magistrate Judge exercised supplemental jurisdiction over Hylla's state law defamation claims pursuant to 28 U.S.C. § 1367, and recommended that this Court dismiss those claims on grounds that the facts alleged were insufficient to establish actual malice as a matter of law.

Under § 1367(c), the Court may decline to exercise supplemental jurisdiction over a claim if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). As a general matter, "when federal claims are dismissed before trial, the normal practice is to dismiss pendent [state law] claims." *Stokes v. Lokken*, 644 F.2d 779, 785 (8th Cir. 1981); *Carnegie-Melon Univ. v. Cohill*, 484

U.S. 343, 350 n.7 (1988).  In determining whether to exercise supplemental jurisdiction, courts consider factors such as judicial efficiency, convenience, and fairness to the litigants, *Condor Corp. v. City of St. Paul*, 912 F.2d 215, 221 (8th Cir. 1990), but should "exercise judicial restraint and avoid state law issues wherever possible." *Thomas v. Dickel*, 213 F.3d 1023, 1026 (8th Cir. 2000).  Indeed, these factors usually point toward declining to exercise supplemental jurisdiction. *Cohill*, 484 U.S. at 350 n.7.

The parties dispute the appropriate legal standard applicable to Hylla's defamation claims under Minnesota law, and it is not immediately clear whether an "actual malice" standard applies to statements made by union officers during labor disputes under the LMRDA.  *See, e.g.*, *Kirk v. Transp. Workers Union*, 934 F. Supp. 775, 787 (S.D. Tex. 1995) (concluding that an actual malice standard should apply to statements expressed in the context of union elections under the LMRDA).  Accordingly, the Court finds that Hylla's defamation claims are more properly submitted for resolution in the state courts of Minnesota.  Although the defamation claims were briefed and decided by the Magistrate Judge on the merits, the Court finds that declining to exercise supplemental jurisdiction over Hylla's defamation claims does not unfairly prejudice the litigants or undermine judicial economy. *Cf. Condor Corp.*, 912 F.2d at 221 (finding supplemental jurisdiction appropriate because it was uncertain whether the plaintiff would still be able to obtain review in state court if the matter were dismissed).   The Court notes, for example, that Hylla dedicated less than three pages of briefing to the defamation claims, and complains in his objections that he has had no opportunity to conduct discovery on the defamation claims in light of the Union's motion to dismiss.  For these reasons, the

Court adopts the Magistrate Judge's Recommendation and dismisses without prejudice Hylla's defamation claims under § 1367(c).

## ORDER

Based on the foregoing, all the files, records, and proceedings herein, the Court **OVERRULES** plaintiff's objections [Docket No. 23] and **ADOPTS in part** the Report and Recommendation dated August 7, 2007 [Docket No. 22].  The Court **ADOPTS** the Magistrate Judge's Report *only* with respect to plaintiff's federal claim under Title I of the LMRDA, but **ADOPTS** the Recommendation as to *all* of plaintiff's claims. Accordingly, **IT IS HEREBY ORDERED** that:

1.      Defendant's Motion to Dismiss, or in the Alternative, for Summary Judgment [Docket No. 8] is **GRANTED**.

        a.      Plaintiff's federal claim under Title I of the LMRDA is **DISMISSED**.

        b.      Plaintiff's remaining state law defamation claims are **DISMISSED without prejudice**.

2.      Plaintiff's Motion for Summary Judgment [Docket No. 13] is **DENIED**.


**LET JUDGMENT BE ENTERED ACCORDINGLY.**


DATED:    September 28, 2007                    _____s/ John R. Tunheim_____
at Minneapolis, Minnesota.                              JOHN R. TUNHEIM
                                                    United States District Judge